# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABABU BADILI ROUNTREE,<br><br>                                     Plaintiff,<br>  vs.<br><br>JAMES E. TILTON, Acting Secretary of the California Department of Corrections,<br><br>                                     Defendant. | CASE NO. 06cv1204-IEG(JMA)<br><br>Order Adopting Report and Recommendation and Denying Petition for Writ of Habeas Corpus |

Petitioner Sabubu Badila Rountree, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his first degree murder conviction in San Diego County Superior Court case number SCD 156327. On August 23, 2007, Magistrate Judge Jan M. Adler filed a Report and Recommendation ("R&R"), recommending the Court deny the petition. Petitioner has filed objections. Following *de novo* review, the Court adopts in full the R&R and DENIES the petition.

## *Background*

The Court need not repeat the underlying facts as fully set forth in Magistrate Judge Adler's R&R, but will instead provide a brief summary. Just before midnight on December 24, 1999, Petitioner, a documented member of the "Lincoln Park Bloods" gang, was attacked by three or four members of the Neighborhood Crips gang while standing outside an American Legion Club just south of Market Street in San Diego. A little after 1:00 a.m. on December 25, 1999, near the intersection of 47th and Market Streets, the victim, Mr. Huffman, was shot and killed.

1       Tasha Devasher testified at trial that she saw Petitioner shoot Mr. Huffman. Petitioner's counsel extensively cross-examined Devasher regarding prejudice and factors impacting her ability to correctly identify Petitioner. Devasher had been a 47th Street Crip since she was a teenager. Devasher admitted she had been drinking the entire weekend before the shooting, had not slept the night before, used marijuana or cocaine that evening, and was not wearing her glasses. However, Devasher had known Petitioner since they were young and living in the same apartment complex. Therefore, Devasher identified Petitioner based upon her personal knowledge of him.  At an evidentiary hearing regarding Petitioner's motion for a new trial, Devasher recanted. Devasher testified at the evidentiary hearing that she falsely identified Petitioner as the shooter because she felt pressured by the investigating officer.

In addition to Devasher's eyewitness identification, the prosecution introduced evidence Petitioner's car was found parked in a lot across the street from the crime scene, with the hood still warm. Also, investigators found a white athletic sock at the scene the following day, near the driver's door of Petitioner's car, which contained gunshot residue on its interior surface. The prosecution introduced evidence of an incident, two years before the shooting, when police officers found Petitioner in possession of a handgun inside a white athletic sock.

The jury found Petitioner guilty of first degree murder and personal use of a firearm.  The trial court sentenced Petitioner to 50 years to life in prison.  The trial court denied Petitioner's motion for a new trial.  The appellate court affirmed his conviction.

### *Discussion*

Magistrate Judge Adler correctly identified the legal standard for a petition under 28 U.S.C. § 2254.  Petitioner is entitled to relief only upon a showing that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254.  Petitioner must demonstrate the state court's decision, rejecting his claim of ineffective assistance of counsel and erroneous admission of evidence, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).

Petitioner contends his trial counsel's representation was constitutionally ineffective in

three respects: (1) counsel failed to obtain a gunshot residue test that "could have raised a reasonable doubt that Mr. Rountree was the perpetrator;" (2) counsel failed to obtain an expert in eyewitness identification to testify regarding Devasher's mental state and the effects of taking/not taking Thorazine; and (3) counsel failed to obtain a weather expert to testify regarding the relationship between the weather conditions and warmth of the hood of the car.  Petitioner also argues the trial court erred in admitting two pieces of evidence at trial: a knotted sock, containing gunshot residue, found on the ground near the driver's side of his vehicle which was parked a block and a half from the crime scene; and (2) a prior incident where police officers found him in possession of a handgun in the door of his car wrapped in a sock.  Magistrate Judge Adler determined each of these claims lacked merit.

**A.  Ineffective Assistance of Counsel**

Magistrate Judge Adler correctly identified the clearly established federal law to be applied to Petitioner's ineffective assistance of counsel claims. Under clearly established U.S. Supreme Court law, to establish ineffective assistance of counsel, Petitioner must show: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 690, 692 (1984).  The Court must review counsel's performance deferentially.  Additionally, a wide measure of deference must be given to counsel's tactical decisions.  Indeed, Strickland notes that "counsel's tactical decisions are virtually unchallengeable."  Strickland at 690; see also, Furman v. Wood, 190 F.3d 1002, 1007 (9th Cir. 1999).  A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland at 689 (citations omitted).

    1.  Failure to Obtain Residue Testing

Applying Strickland, Magistrate Judge Adler found Petitioner failed to demonstrate his counsel's failure to obtain gunshot residue ("GSR") testing fell below an objective standard of reasonableness.  In rejecting Petitioner's claim regarding counsel's failure to obtain GSR testing, the state appellate court relied primarily upon three factors:

> First, the People's case did not turn on the theory that [the victim] was shot at point blank range. . . . Second, Rountree downplays that, in fact, GSR was found on [the

> victim's] jacket. . . .  Further, Rountree's papers demonstrate a reasonable tactical basis for his trial counsel's decision to forego GSR testing.

[Lodgment No. 8, at 20-22.]  The state court concluded:

> We cannot, on this record, including the evidence of the GSR found on [the victim's] jacket, view this as anything other than a reasoned tactical decision within the judgment of trial counsel. The presence of GSR in fact did not help Rountree's defense because it was plausible that the residue was deposited at fairly close range (two feet) in a manner consistent with Devasher's testimony. On this issue, Rountree has not overcome the strong presumption that his counsel's decision was reasonable.

[Id. at 22.]  Magistrate Judge Adler found the state court's rationale persuasive, and concluded that "counsel's conscious choice not to obtain a GSR test for the victim's clothing should be given a heavy measure of deference."

In his objections, Petitioner argues results from the GSR testing could have established reasonable doubt in the minds of the jurors. Devasher testified at trial (albeit on cross-examination) that the shooter walked up to the victim, put one hand on the victim's shoulder, and then shot.  Petitioner argues the prosecutor relied upon the close range shooting to support the first degree murder charge. Petitioner further argues the GSR testing would have supported the theory that shots were fired from a brown or beige car which Devasher and other witnesses testified drove by around the time of the shooting.

In support of his argument, Petitioner cites Sims v. Livesay, 970 F.2d 1575 (6th Cir. 1992) where the Sixth Circuit found trial counsel's performance constitutionally ineffective because he failed to have a key piece of evidence tested for GSR.  In that case, however, the identity of the shooter was known and the only question presented was whether the shooting was accidental or intentional. Counsel offered no strategic reason for failing to conduct GSR testing, and given the evidence in the case it was apparent such testing was critically relevant to judge the credibility of the defendant's defense.  As noted by the state appellate court in this case, however, Petitioner's trial counsel had a reasonable tactical basis for his decision to forego GSR testing. If GSR had been found on the victim's clothing, it would have been harmful to the defense. Furthermore, once GSR testing was performed relative to Petitioner's post-trial motions, the results were not helpful to Rountree's defense. Expert testimony showed "the residue was deposited at fairly close range (two feet) in a manner consistent with Davasher's testimony."  As a result, this Court cannot say

that the state court's decision rejecting Petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law."

### 2. Expert on eyewitness testimony

Magistrate Judge Adler also found Petitioner failed to demonstrate his trial counsel's failure to obtain an expert on eyewitness identification violated the Sixth Amendment. In rejecting Petitioner's claim, the state court found counsel had a reasonable tactical basis for not hiring an expert. Although trial counsel did contact an eyewitness identification expert, "[b]ecause Ms. Devasher knew Mr. Rountree, the expert opined that his testimony would be of no value to the defense." The state court also found Petitioner failed to show prejudice:

> Having reviewed the evidence presented at trial, we are convinced there is no reasonable probability the jury would have reached a different result had it heard testimony from Rountree's proposed identification expert about the possibility that Devasher was hallucinating or suffering other debilitating consequences of either intoxication or mental illness on the morning of [the] murder. On Devasher's cross examination, counsel had Devasher admit she had taken Thorazine in the past, but had not taken any that night, or at all during the month of the shooting. Nor had she taken her pills for depression. Devasher's state of intoxication that night, both by alcohol and drugs, as well as her need for eyeglasses and her history of mental illness was presented at length to the jury, both on cross-examination and in closing arguments. Further, as we have stated, there was other circumstantial evidence pointing to Rountree as the shooter, namely the nearby presence of his vehicle and the sock evidence.

[Lodgment No. 8, at 24-25.] Magistrate Judge Adler found the state court's reasoning to be sound and recommended the Court reject Petitioner's claim.

In his objections, Petitioner argues there is insufficient evidence trial counsel contacted an eyewitness testimony expert because he was unable to identify that expert at the time Petitioner's state habeas corpus petition was filed. Petitioner also argues trial counsel should have contacted more than one potential expert because an eyewitness testimony expert could have significantly undermined Devasher's testimony. Petitioner seeks an evidentiary hearing to establish whether his counsel in fact contacted an eyewitness testimony expert.

Even assuming Petitioner could show at an evidentiary hearing that his trial counsel did not contact a single eyewitness testimony expert, he is not entitled to relief because he cannot establish prejudice. Throughout trial there were numerous references to Devasher's drug and alcohol abuse, as well as her mental health issues. The jury heard that Devasher had consumed three to four six-

1  packs of beer on the day of the shooting and had also been smoking marijuana and cocaine during
2  the day and into the evening of the shooting.  The jury also heard testimony that Devasher checked
3  herself into a psychiatric hospital shortly after the shooting because of her drinking and
4  depression, and because she was hearing voices.  Devasher testified she was not wearing her
5  prescription glasses at the time of the shooting and she was not taking her medications.  The jury
6  also heard testimony regarding the medications Devasher was taking at the time she was
7  questioned by officers in the psychiatric hospital, at which time she identified Petitioner as the
8  shooter.  As Magistrate Judge Adler noted "[i]t is virgually inconceivable that an expert's analysis
9  of Ms. Devasher's 'disabilities' would have further assisted the defense, much less the outcome of
10 the trial."  Petitioner has not shown the state court's decision rejecting his claim was "contrary to,
11 or involved an unreasonable application of, clearly established Federal law."

### 3. Expert on weather conditions

Magistrate Judge Adler also found trial counsel was not constitutionally ineffective for failing to obtain a forensic engineering expert. Petitioner argued his counsel should have obtained an expert to testify regarding the effect of weather conditions on the temperature of the hood of his car, which was found near the scene of the shooting. The state court rejected Petitioner's claim finding trial counsel reasonably concluded an expert would not be able to replicate conditions of the weather or the vehicle to a point of substantial similarity so as to make the results of the testing admissible at trial. [Lodgment No. 8 at 25-26.] Magistrate Judge Adler concluded the state court correctly found trial counsel's decision was a strategic choice that did not deprive Petitioner of his right to counsel. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . . In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91.

Petitioner objects, arguing his appellate counsel was able to locate an expert who could have testified at the state evidentiary hearing on this matter.  Petitioner argues expert testimony regarding how long the hood of his car would have remained warm on the night of the shooting could have raised reasonable doubt in the minds of the jury as to whether he was the shooter.

1    Upon review, the Court agrees with Magistrate Judge Adler's conclusion that the state
2 court's denial of this claim was not contrary to or an unreasonable application of Strickland.  It
3 was not an unreasonable decision for trial counsel to pursue other investigatory leads rather than
4 hire an expert to testify regarding the warmth of the car hood.  Although the presence of the
5 vehicle near the scene of the shooting was evidence corroborating Devasher's identification of
6 Petitioner, the exact timing of Petitioner's arrival at the location was not a central issue in the case.
7 It is not likely the proposed expert's testimony would have impacted the jury's consideration of
8 the facts in this case. Therefore, Petitioner is not entitled to relief on this claim.

**B.  Admission of Evidence**

10    Finally, Magistrate Judge Adler rejected Petitioner's claim the trial court abused its
11 discretion in admitting certain evidence at trial.  At trial, the prosecution presented evidence that
12 approximately two years prior to the shooting, a police officer stopped Rountree for a routine
13 traffic violation and found a handgun beneath the driver's seat partially hidden in a white sock.
14 The prosecution also introduced into evidence a white sock, containing particles of gunshot
15 residue, found on the ground next to the driver's side of Rountree's vehicle near the crime scene.
16 "The trial court found the presence of the white athletic sock a block and a half away from the
17 crime scene, on the morning of [the victim's] murder next to the driver's door of Rountree's car,
18 relevant to the issue of 'whether or not there was a gun present in that parking lot.'" [Lodgment
19 No. 8, at 7.]   The state court rejected Petitioner's claim that the trial court erred in admitting the
20 sock and prior handgun possession, finding that even if the trial court erred Petitioner could not
21 show prejudice. [Id. at 9-10.]

22    As Magistrate Judge Adler correctly noted, under clearly established Federal law, errors of
23 state law do not provide the basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68
24 (1991).  "A federal court may not issue the writ on the basis of a perceived error of state law."
25 Pulley v. Harris, 465 U.S. 37, 41 (1984).  The erroneous admission of evidence at trial may deny a
26 defendant the right to due process only where the error rendered the trial fundamentally unfair.
27 Alberni v. McDaniel, 458 F.3d 860, 865 (9th Cir. 2006) (citing Dowling v. United States, 493 U.S.
28 342, 352 (1990) (evidence that is "so extremely unfair that its admission violates fundamental

1 conceptions of justice" may violate due process). Magistrate Judge Adler found that even if the
2 evidence was erroneously admitted, no prejudice resulted because there was substantial direct and
3 circumstantial evidence that petitioner shot the victim.

4 In his objections, Petitioner argues the introduction of the evidence violated his right to a
5 fair trial and his right to have his guilt determined beyond a reasonable doubt. Petitioner argues
6 the sock was a crucial piece of evidence because without it the jury could have completely
7 discredited the testimony of Devasher, a rival gang member whose identification was extremely
8 questionable. If the sock had not been introduced into evidence, along with the evidence that he
9 previously possessed a handgun hidden in a white athletic sock, Petitioner argues the jury would
10 not have found him guilty.

11 Upon review, the Court agrees Petitioner is not entitled to relief on this claim. Petitioner
12 argues the sock and prior possession evidence should not have been admitted at trial because any
13 probative value was outweighed by the prejudice. However, to implicate the Due Process Clause,
14 it is not enough for Petitioner to show the probative value of the contested evidence was
15 outweighed by its prejudicial effect. Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986).
16 Petitioner is not entitled to relief "unless admission of the [evidence] was arbitrary or
17 fundamentally unfair." Id.

18 As Magistrate Judge Adler noted, the trial court received briefing and argument regarding
19 the admissibility of the evidence. The trial court found the presence of the white athletic sock near
20 the crime scene, containing gunshot residue, combined with Petitioner's prior possession of a gun
21 concealed in a white athletic sock, was relevant to the issue of "whether or not there was a gun
22 present in that parking lot." The state court's decision was neither arbitrary nor fundamentally
23 unfair. Petitioner has not pointed to any other cases where admission of similar evidence has been
24 found to violate due process. In light of the other evidence in the case it cannot be said the
25 admission of the evidence "violates fundamental conceptions of justice." Dowling, 493 U.S. at
26 352.
27 ///
28 ///

*Conclusion*

For the reasons set forth herein, the Court rejects Petitioner's objections, adopts in full Magistrate Judge Adler's Report and Recommendation, and DENIES the petition.

**IT IS SO ORDERED**.

DATED: December 31, 2007

*[signature]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**